UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                            :
STACY A. GALLAGHER,                                         :   **MEMORANDUM DECISION AND**
                                                            :   **ORDER**
                              Plaintiff,                    :
                                                            :   21-cv-2768 (BMC)
           - against -                                      :
                                                            :
COMMISSIONER OF SOCIAL SECURITY,                            :
                                                            :
                              Defendant.                    :
                                                            :
----------------------------------------------------------- X

**COGAN**, District Judge.

      The sole issue in this social security disability review proceeding is not whether the case should be remanded. Both sides agree that a remand is appropriate. Their difference is that plaintiff wants the case remanded solely for the calculation of benefits, and the Commissioner wants the case remanded so that the Administrative Law Judge can have another opportunity to consider numerous medical opinions that were not acknowledged at all or acknowledged inadequately. The decision from the hearing under review here, not incidentally, was not the first hearing that plaintiff had on her application. Rather, the decision under review here was the result of plaintiff's second hearing – the decision from her first hearing having been remanded from federal district court by stipulation of the parties. Plaintiff's disability application was first filed in February 2014.

      This time around, the ALJ found plaintiff able to perform sedentary work with restrictions that put her at about the lowest level of what could be considered non-disabled. To bring matters even closer to that line, the ALJ found that, in fact, plaintiff was disabled more than a year before she filed her application – from January 28, 2014 – but her disability ended on June 30, 2015. Even more than that, the medical expert who so testified at the second hearing,

Dr. Lorber, and upon whom the ALJ principally relied, concluded that plaintiff was, in fact, disabled during that period not because of an inadequate residual functional capacity, but because she met the criteria for the Listing of Impairments § 1.04 (spinal disorders). According to Dr. Lorber and the ALJ, plaintiff went from having a listed impairment on June 29, 2015 to having a sufficient RFC to be able to do sedentary, albeit highly restricted, work the next day. In addition, the Commissioner has not disputed that plaintiff had a subsequent disability onset date of January 31, 2019. Thus, there is no dispute that plaintiff was disabled until June 30, 2015 and again as of January 31, 2019 – we are therefore talking about the 3 1/2 year "gap."

As to that period, the Commissioner agrees with plaintiff that the ALJ did not adequately evaluate the opinion submissions from four mental health care professionals and four physical health care professionals. The question is whether the record is so one-sided that an ALJ conducting a proper review would very likely find that plaintiff was entitled to benefits. See Schaal v. Apfel, 134 F.3d 496, 504 (2d Cir. 1998).

It is tempting to so find. As plaintiff points out, this is a very old case, having been filed in 2014, hopefully (just because of the vintage of such cases) one of a dwindling number still subject to the since-repealed treating physician rule. The Commissioner points out that delay alone is insufficient to warrant a benefits-only remand, see Bush v. Shalala, 94 F.3d 40, 46 (2d Cir. 1996), perhaps because the goal is to accurately determine the severity of a claimant's impairments, not to punish the Commissioner for inefficiency. However, there is much more than mere delay going on here. Plaintiff has had days of hearings and, including the instant review proceeding, will have had two remands in which the Commissioner acknowledges that the ALJ's determinations were insufficient. The record is enormous, which suggests that a properly considered decision may, and probably should, take more than the usual amount of

time. This last-offered remand isn't because the ALJ made some technical error; the Commissioner acknowledges eight overlooked or inadequately addressed medical opinions.

At least one of those opinions, from her treating psychiatrist Dr. Alasyali, would clearly require a finding of disability if accepted. Dr. Alasyali had been treating plaintiff for years. Her opinion is dated March 3, 2015 – within the period in which the ALJ found plaintiff disabled – but if one accepted Dr. Alasyali's opinion through March, it would seem a stretch to conclude that by the end of June that same year, plaintiff had recovered sufficient RFC to allow restricted sedentary work. Most of the opinions from the professionals who actually met with and treated plaintiff, at least on her mental health impairment, were similarly unequivocal in presenting a functional analysis supporting only a conclusion of disability.

Plaintiff therefore has a plausible argument that enough is enough. However, the goal remains to accurately determine whether plaintiff lacks sufficient RFC to perform sedentary work with restrictions, and the record is not so one-sided that an ALJ would necessarily have to find disability as a matter of law. There are opinions from other medical experts and consultants that, if accepted, would strongly suggest a finding of non-disability. Because the record is not so one-sided that an ALJ could not make a finding that plaintiff is able to do sedentary work with restrictions, I am compelled to remand the case for another hearing and determination as to her RFC.

However, given the protracted nature of this case, I am also compelled to suggest that the Commissioner take another hard look at it. Of the many opinions, only one upon which the ALJ might rely to support a finding of non-disability is based on an actual meeting with or examination of plaintiff. The others are all records-only review opinions. The Commissioner points out that such opinions can constitute substantial evidence, see Halloran v. Barnhart, 362

F.3d 28, 32 (2d Cir. 2004), and that is true. There is no requirement that an ALJ's decision be based on opinions where the health care professional has actually examined the claimant. Yet it is also true that one might expect professionals who are familiar with plaintiff through a course of treatment to be better able to define the tasks that she is and is not able to perform; that is the rationale for the treating physician rule. See Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008). Several of the opinions that the ALJ needs to consider on remand are those of treating professionals, and especially since this case is governed by the treating physician rule, it is a very close question as to whether an ALJ could reasonably conclude that plaintiff is not disabled.

Moreover, there are some shortfalls in some of the record review-only opinions upon which the ALJ might rely on remand to find non-disability. The psychologist who opined that plaintiff had no work-affecting functional mental impairments, Dr. Jennifer Blitz, left most of her questionnaire blank, rather than completing the function-by-function analysis for which it called. Dr. Blitz also noted that plaintiff's physical pain might be contributing to her major depressive disorder and anxiety disorder but that "this would need to be determined by a medical doctor," which Dr. Blitz is not. Consistent with that, when she testified at one of the hearings, she stated that she didn't agree with plaintiff's treating psychiatrist because "my role is . . . to evaluate specifically from the point of view of how the psychiatric impairments affect functioning, not how the physical impairments affect functioning." Having reviewed this record, no reasonable adjudicator could miss the fact that plaintiff's pain and her medically-prescribed drug addiction accounts for some if not all of her depression and anxiety, but Dr. Blitz's punt on that issue may reduce the probative value of her evaluation. There are many cases where mind and body impairments cannot be easily separated, see Thompson v. Astrue, 416 F. App'x 96, 97 (2d Cir. 2011), and this certainly seems like one of them.

Dr. Lorber's testimony at the hearing based on plaintiff's records is also problematic. There was something happening there beyond a dispassionate opinion based on the medical records. Dr. Lorber was greatly troubled (as is plaintiff, according to her attorney) by the fact that one or more of her doctors had caused her to become addicted to opioids. Dr. Lorber so stated numerous times, and often not in response to any question. It is not clear to what extent that concern caused Dr. Lorber to discount the opinions of the treating professionals responsible, and perhaps even those who weren't responsible, but one could conclude that there might be an unaccounted-for bias against either treating physicians generally or one or more of them in this case.

There is some indication of that in the overall view Dr. Lorber expressed about the opinions of treating physicians: "A treating physician is always an advocate for the patient." That seems inconsistent with the treating physician rule. Dr. Lorber's opinions were at least partially based on this assumption of treating physician advocacy. It is part of the reason that Dr. Lorber expressly disagreed with the four or five treating provider opinions that were contrary to his.

I recognize that Dr. Lorber may be partially right (although he overstated it with the use of "always"). But that's not his issue. One could just as easily posit that a consulting physician or medical expert frequently retained by the Social Security Administration has a non-disability bias. That is, one could argue that a frequent evaluator or witness might testify to non-disability with the subliminal if not overt knowledge that he may be retained more regularly than if he continually testified in a high percentage of contested cases that the claimants whose records he reviewed were disabled. My point is that Dr. Lorber should have stuck to the medical records, and not have expressed opinions about the alleged bias of treating physicians.

In addition, there were other points about Dr. Lorber's opinions that seem contrary to the way these cases are determined. He discounted the leg raising tests when, like plaintiff's, they yield positive results because "[r]ange of motion is totally under the control of a patient . . . ." Yet leg raising tests are an express requirement in determining the application of the back disease listing. See Listing 1.04(A) ("if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)."). He found the fact that plaintiff had been prescribed a walker to be "not medically indicated" because there was no evidence of wasting or muscle weakness. As to plaintiff's treaters' functional evaluations, Dr. Lorber objected to plaintiff's doctors' opinion that she would miss work more than four times a month because of the pain, reasoning that "there is no scientific way to determine that number" and he "consider[s] their numbers four a month to be nothing more than speculation . . . ." Yet the projected number of monthly absences is an opinion that the Commissioner herself expressly solicits from medical professionals. Dkt. 9 at 13F (Medical Assessment Physical Ability-Work Related Activities).

If one were to eliminate Dr. Lorber's opinions from this record, it would be very, very difficult to find that plaintiff was not disabled during the period in question. However, I am not able to reach that conclusion as a matter of law. Although it will be up to the ALJ to again consider Dr. Lorber's opinion – together with the other medical opinions acknowledged by the Commissioner – the Commissioner is urged to carefully reconsider whether more hearings are going to be worth it.

Accordingly, the Commissioner's motion to remand this case is granted; plaintiff's motion for judgment on the pleadings is granted to the extent that the case is remanded, and denied to the extent she seeks a benefits-only remand. Pursuant to the fourth sentence of 42 U.S.C. § 405(g), the case is remanded so that the ALJ can conduct a rehearing to evaluate all of

the medical opinion evidence. That could include having another consultant examine plaintiff or another medical expert testify at the hearing, if the ALJ deems it advisable.

**SO ORDERED.**

                                      Digitally signed by Brian M. Cogan
                                                        U.S.D.J.

Dated: Brooklyn, New York
          June 27, 2022